RESPUBLICA *against* JOHN WRAY.

The act of 1st. October 1779, § 4, which directs that county treasurers shall give secu-
rity in 500*l.* has reference to continental money then in circulation.
An information in the nature of a *quo warranto*, being now used to try a mere civil
right, is not prohibited by the state constitution, and will be granted when a fair
doubt is raised, and the parties come in due time with clean hands.

A Rule was granted at the last term, on the affidavit filed, that the defendant should show cause why an information in the nature of *quo warranto*, should not be filed against him for assuming and exercising the office of treasurer of Cumberland county.

Messrs. Dallas and J. B. M'Kean for the defendant, now showed cause from records, affidavits and other proofs.

On the 19th May 1795, the commissioners of Cumberland county met, and on the 20th of the same month they appointed Robert Miller, junior, treasurer of the said county for three years, from the 5th day of June then next.

On the 1st June 1798, the commissioner then in office being John Jordon, Samuel Gray and Joseph Shrom, a majority of them appointed the defendant to succeed the said Robert Miller as treasurer on the 5th June ; but Shrom dissented from the appointment.

On the same day, the defendant was notified of his appointment, and offered two bonds, with two sureties thereon, one in the penalty of 2000*l.* and the other in 800*l.* conditioned for the faithful performance of his office ; and on the 13th June, he offered another bond with three sureties, in the penalty of 2000*l.* with like condition.   But these not being approved of by the commissioners, he on the 20th June offered a fourth bond with four sureties, in the same penalty and with the like condition, which was approved of by the majority of the commissioners, and he took the oath of office before John Jordon, esq.

On the 26th October, two of the commissioners gave notice to Jordon of their intention to appoint a new treasurer, but he neglecting to attend the board, they proceeded to appoint Robert Miller to that office.

A *certiorari* had been issued to the commissioners in the Common Pleas of Cumberland county, returnable to last August term, to which two separate returns were made, one by Jordon stating the preceding facts, and the other by Shrom, that he had never elected the defendant as treasurer, and that the commissioners had conversed on the subject of his appointment, against which he had protested.   The *certiorari* was quashed in the Common Pleas on the 6th January last, after the first application had been made to this court.

It appeared by the affidavits, that Gray, when of sound mind, concurred in the appointment of the defendant, who promised him, that he would resign the office, after he gave his security ; but that Gray shortly after was much dissatisfied with what he had done, and became deranged.

A certificate of judgments to a considerable amount against Wray, and another certificate of the prothonotary of Cumberland county that the oath of office subscribed by him had not been transmitted to his custody, were produced in support of the present motion.   And it was further alleged, that Gray had not taken the oaths either to the federal or state governments.

Messrs. Ingersoll and Duncan argued, that the appointment of Wray to the office of treasurer was void, *ab initio*, he not having taken the oath to support the constitution of the United States, or subscribed his oath of office.   The 6th article of the constitution of the United States directs, that all state officers shall take an oath to support that

constitution ; and by the 11th section of the act of 17th April 1795, the oath of the treasurer must be subscribed by him, and transmitted to the prothonotary of the proper county.   3 Dall. St. Laws, 750. His appointment also was corruptly made, under a solemn engagement, that he would resign it.   The 11th section of the act of 24th March 1786, directs, that treasurers shall hold their offices for three years to be computed from the 1st June, or the days of their appointment.   2 Dall. St. Laws, 441.   Here the appointment was made by persons act. ing under a special authority, before the time of the former treasurer was expired, to commence at a future day, in a manner unknown to the law.

The defendant entered on the duties of the office, before he gave the security required by the law.   The sureties in the three first bonds of. fered, were not approved of by the commissioners ; and the last is in the penalty of 2000*l.* only, which under the 4th section of the act of 1st October 1779, is directed to be in 5000*l.*   1 Dall. St. Laws, 807,

Moreover, Samuel Gray could not legally join in any appointment. He was born in Ireland, came from thence in 1785, and had neither taken the oath to the United States, nor the oath of allegiance to Pennsylvania.   All officers executive and judicial, shall take the oath of office and allegiance to this state.   Penn. Con. Art. 8.

Messrs. Dallas and J. B. M'Kean, against the rule.   The affluance of Wray, or his poverty, cannot influence the question, if a majority o f the commissioners have thought him a proper person to discharge the duties of the treasurer's office, and have nominated him thereto.   They have the exclusive exercise of their discretion in the nomination.

No proof has been offered of corruption ; and under the section of the law of 1786, relied on, a treasurer, who resides in the county, and has given the proper security, is not removable from his office, unless he shall be convicted of misbehavior or delinquency in office, by a jury of the proper county.

It is admitted that Shrom opposed his election, but he was present when it took place.   Else why did he protest against their proceedings?

It may be dubious, how far the oath to support the constitution of the United States, is applicable to the case of a county treasurer.   As to the defendant's oath of office not being subscribed by him, or sent to the prothonotary, that neglect is imputable solely to the justice be- fore whom it was taken, and shall not vitiate his election.

The appointment of Wray follows the precedent in Miller's case, who was appointed 16 days before his duties were to commence. The law fixes no day certain for the nomination of a county treasurer. A free communication of the sentiments of the commissioners previous to such election, is attended with many conveniences. If it should not take place until the very day, when the time of the former officer expires, casualties may happen to prevent it.

The security given by Wray, was approved of by a majority of the commissioners on the 28th June; and the law of 1779, has reference to the depreciated continental money then in circulation, and has always been taken so in practice. The security would otherwise in many instances be exorbitantly high.

[This construction of the law was assented by the attorney general and sanctioned by the court.]

The incapacity ascribed to Gray, would be attended with serious consequences. It would, if established, invalidate all his acts, as commissioner. The argument certainly proves too much. But would it not be highly unreasonable, to call on Wray to ascertain the citizenship of Gray, or his conformity to the laws? How should he get possession of the other's papers? It is enough for him and every other person acting under him as a commissioner, that he was duly elected by the people, and acted in that capacity. The conformity of an officer *de facto* to the laws shall be presumed. The mode of procedure contemplated, is novel in Pennsylvania.

A doubt was then suggested, whether the information prayed for, might not contradict the 10th section of the 9th article of the state constitution, the facts charged not being oppression and misdemeanor in office.

To this it was answered, that though an information in the nature of *quo warranto*, was originally a criminal method of prosecution, yet it has long been applied to the mere purposes of trying civil rights, the fines being nominal only. 3 Bl. Com. 263. 4 Bl. Com. 308.

By the court. Probable grounds have been shown, to induce us to put the matter in a train for trial. "A jury will judge of the facts. All that we are to look to, is that a fair doubt is raised, and that the parties applying, come with the clean hands, and in proper time." 3 Term. Rep. 588, 589. A mere civil right will be tried on this information prayed for, and the method of procedure is no violation of the constitution. Reasonable suspicions have been excited in our minds,

to make us doubt the legality of Wray's appointment.   Two of the commissioners gave him their votes ; if one of them was prevailed on to give him his vote, under his engagment to resign, there has been a deception, which would defeat the act.

Both of these commissioners were dissatisfied with the sureties offered an the 1st and 13th June.   He enters on the duties of his office notwithstanding, and it is not until the 20th June that he offers them such security as they approve of.   Let the information be filed.